RECEIVED
USDC CLERK, CHARLESTON, SC
2026 OCT -6 A 9:03

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

NICOLE ANASTASIA GRAY,

Plaintiff,

v.

Civil Action No. 2:26-cv-4484-BHH-MGB

KELLY GOVERNMENT SOLUTIONS;
CGI FEDERAL;
UNITED STATES DEPARTMENT OF STATE; and
MARCO RUBIO, in his official capacity as Secretary,
U.S. Department of State

Defendants.

**COMPLAINT (JURY TRIAL DEMANDED)**

Plaintiff Nicole Anastasia Gray, proceeding pro se, brings this action against Kelly Government Solutions ("KGS"), CGI Federal ("CGI"), and the United States Department of State ("Department of State" or "DOS"), through the head of the Department as required by applicable federal-sector Title VII law, and alleges as follows:

I. INTRODUCTION

1. This action arises from Plaintiff's termination from her contractor position at the United States Department of State's Charleston Passport Center ("CPC") after a series of events involving sex-based treatment, a romantic relationship between Plaintiff and a Department of State employee, Plaintiff's opposition to treatment that she reasonably believed was related to that relationship and her sex, disclosures concerning suspected nepotism and abuse of authority, and an unexplained request that Plaintiff be removed from her federal-contractor assignment.

2. Plaintiff was formally employed and paid by KGS. KGS, however, was a subcontractor beneath CGIFederal, which was the principal contractor-supporting the Department of State at the Charleston Passport Center.

3. Plaintiff did not have a KGS supervisor physically present at the Charleston Passport Center.

4. Plaintiffs direct supervisor at the CharlestonPassport Center was a CGI Federal employee.

5. The supervisor above Plaintiffs section was a Department of State employee who served as theCustomer Service Manager.

6. Both CGI Federal and Department of State personnel exercised direct authority over important aspects of Plaintiffs daily work.

7. CGI Federal and Department of State personnel could change Plaintiffs workstation, assign or change Plaintiffs daily work, provide instructions concerning the work Plaintiff was required to perform, and participate in training and supervision.

8. CGI Federal and Department of State personnel supplied equipment, systems, and other resources that Plaintiff was required to use to perform her duties.

9. Plaintiff was required to follow instructions from Department of State Passport Specialists and adjudicators when performing Customer Service functions, including assisting adjudicators with cases, assisting with "not issue" cases, and assisting with documentation concerning original identity records before returning those records to their owners.

10. Both CGI Federal and Department of State personnel exercised authority over Plaintiffs work environment and assignment.

11. Most significantly, both CGI Federal andDepartment of State personnel had the ability to request removal of contractor personnel from theCharleston Passport Center assignment.
12. On November 14, 2025, KGS informed Plaintiff in writing that a "request to remove" her from the assignment had resulted in the immediate end of her assignment.
13. KGS did not identify the person or entity that made the request.
14. Plaintiff alleges, on information and belief, that the identity of the person or entity who requested her removal, the communications leading to that request, and the authority under which the request was made are presently within the possession, custody, or control of Defendants.
15. Plaintiff therefore pleads that CGI Federal and the Department of State were joint employers ofPlaintiff, or alternatively that the Department of State exercised sufficient control over Plaintiff's work and employment assignment to constitute an employer under the applicable federal-sector EEO law.
16. Plaintiff further pleads that KGS, CGI Federal, and the Department of State may have acted jointly, through their respective employees and agents, in causing or facilitating the adverse employment actions alleged herein.

II. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal employment-discrimination law, including Title VII of the Civil Rights Act of 1964.
2. This Court also has jurisdiction under the federal statutes governing employment discrimination by federal agencies to the extent the Court determines that Plaintiff qualifies as an employee of the Department of State under the joint-employer analysis.

3. Venue is proper in the District of South Carolina because the employment at issue occurred at the Charleston Passport Center in North Charleston, South Carolina, and a substantial part of the events giving rise to the claims occurred in this District.
4. Plaintiff filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") concerning the employment discrimination and retaliation alleged herein.
5. The EEOC issued Notices of Right to Sue onSeptember 15, 2026, concerning Charge No. 415-2026-02650 and Charge No. 415-2026-02588.
6. The EEOC's notices expressly states that the EEOC would not proceed with investigation and made no determination concerning whether further investigation would establish statutory violations.
7. The EEOC notices further state that the notices are official Notices of Right to Sue and that a federal lawsuit must be filed within 90 days after receipt.
8. Plaintiff files this action within the applicable period following receipt of the EEOC notices.

III. PARTIES

1. Plaintiff Nicole Anastasia Gray is a resident of Summerville, South Carolina.
2. Defendant Kelly Government Solutions is a private federal-government contractor/subcontractor that employed and paid Plaintiff.
3. Defendant CGI Federal was the principal contractor supporting the Department of State at the Charleston Passport Center and exercised supervisory and operational authority over Plaintiff's work.

4. Defendant United States Department of State is a federal agency of the United States Government and operated the Charleston Passport Center through its Bureau of Consular Affairs.
5. Plaintiff names the Department of State as a defendant because Department of State personnel exercised substantial and direct control over Plaintiff's work, including supervision, assignments, training, equipment, systems, workplace placement, and the ability to request removal from the assignment.
6. Plaintiff does not allege that the Department of State is liable merely because Plaintiff worked in a federal facility. Plaintiff alleges that the actual employment relationship demonstrates sufficient control by the Department of State to warrant application of the joint-employer doctrine.

IV. PLAINTIFF'S EMPLOYMENT AT THE CHARLESTON PASSPORT CENTER

1. Plaintiff began working at the Charleston Passport Center in approximately May 2024 as a Level II contractor employee.
2. Plaintiff initially worked in the Batch Storage Room ("BSR"), where she distributed batches of passport applications and supporting identification documents to Department of State Passport Specialists for adjudication.
3. Plaintiff met Carlton Wright, a Department of State Passport Specialist, through this work.
4. Plaintiff subsequently received opportunities for promotion to Level III positions.
5. Plaintiff was promoted into a Level III Customer Service position in approximately November 2024.

6. Plaintiff's duties included preparing Information Request Letters (IRL's) as well as Non-Issuance (NI's)for Department of State Passport Specialists, including Mr. Wright and other adjudicators.
7. Plaintiff worked in an operational environment in which contractor employees and Department of State employees worked together to process passport applications.
8. Plaintiff's daily work was therefore integrated into the Department of State's passport-processing mission.

V. DEPARTMENT OF STATE AND CGI FEDERAL CONTROL OVER PLAINTIFF'S WORK

1. Plaintiff was not supervised at the Charleston Passport Center by a KGS supervisor and there were no KGS supervisors employed nor on site.
2. Plaintiff's direct supervisor was a CGI Federal employee.
3. The supervisor above Plaintiff's section was a Department of State employee serving as Customer Service Manager.
4. Both the CGI Federal supervisor and Department of State supervisor could change Plaintiff's workstation.
5. Both could affect the work Plaintiff was assigned on a daily basis.
6. Plaintiff was expected to follow instructions from Department of State adjudicators when assisting them with passport cases.
7. Plaintiff performed work directly supporting Department of State Passport Specialists.
8. CGI Federal and Department of State personnel participated in training Plaintiff and required Plaintiff to complete training.

9. CGI Federal and Department of State supplied equipment and systems Plaintiff used in performing her duties; including but not limited to the consulars database.
10. Plaintiff's work was performed according to operational requirements established within the CGI Federal/Department of State contracting environment.
11. Plaintiff was subject to the authority of Department of State personnel while performing substantive work supporting the Department's passport adjudication functions.
12. Department of State and CGI Federal personnel therefore exercised control over the means and manner of Plaintiff's work beyond merely providing a physical work location.
13. Plaintiff alleges that the precise allocation of supervisory authority between KGS, CGI Federal, and the Department of State is substantially contained in contracts, policies, organizational charts, communications, personnel records, and other documents presently controlled by Defendants.
14. Plaintiff therefore requests discovery concerning the contractual and operational relationship among KGS, CGI Federal, and the Department of State.
15. Plaintiff further alleges that the Department of State retained authority over contractor access to and removal from the Charleston Passport Center.
16. The November 14, 2025 communication from KGS specifically stated that a request had been made to remove Plaintiff from her assignment.
17. Plaintiff was not told who made that request to her contractor.
18. Plaintiff alleges that the person or entity requesting her removal possessed authority within the CGIFederal/Department of State contracting structure sufficient to cause KGS to terminate her assignment.

19. These facts support Plaintiff's allegation that the Department of State was a joint employer or otherwise exercised sufficient employment control to fall within the applicable federal employment-discrimination framework.
20. The EEOC has recognized that the fact that a worker is paid by a private contractor does not, standing alone, resolve whether the federal agency is also an employer. The EEOC considers the actual control exercised over the worker's position. See EEOC guidance concerning contractor/joint-employer relationships.
21. Plaintiff also relies upon the reasoning concerning contractor joint-employer status discussed in Sargent v. Department of State, No. 1:19-cv-00620 (D.D.C.), while recognizing that the ultimate determination depends upon the particular facts and applicable law.

## VI. ROMANTIC RELATIONSHIP WITH DEPARTMENT OF STATE EMPLOYEE

1. Plaintiff began a romantic relationship with Carlton Wright in approximately October 2024.
2. Mr. Wright was a Department of State Passport Specialist working at the same Charleston Passport Center.
3. Plaintiff's employment and Mr. Wright's Department of State position therefore existed within the same operational workplace.
4. Plaintiff and Mr. Wright interacted in circumstances arising both from their personal relationship and their work environment.
5. At one point Plaintiff's DOS supervisor communicated with Mr. Wright's DOS supervisor concerning Mr. Wright's repeated visits to Plaintiff's workstation.

6. This communication demonstrates that management personnel knew of the romantic relationship or of the nature of the interaction between Plaintiff and Mr. Wright.
7. Plaintiff alleges that the employment consequences described below must be evaluated in light of this workplace relationship and the treatment of Plaintiff as the woman involved in that romantic relationship.

VII. AUGUST-SEPTEMBER 2025 EVENTS

1. On August 27, 2025, Mr. Wright told Plaintiff that his final divorce hearing was scheduled for September 3, 2025.
2. On August 28, 2025, the romantic relationship changed and Mr. Wright represented that the relationship had ended.
3. Despite the purported breakup, Mr. Wright continued romantic and sexual conduct with Plaintiff during September and October 2025.
4. On September 8, 2025, Plaintiff sent an email concerning her application for a Department of State Passport Specialist position. Coincidentally, Sylvia Wright made a public announcement with official launch of her campaign on that same date, which was later published in news articles and on her campaign website.
5. Plaintiff had previously applied through USA JOBS and had received information indicating that she met the requirements for the Grade 5 and Grade 7 Passport Specialist positions and that her application was sent to the hiring authority.
6. Plaintiff had been informed on April 10, 2025 that she was not selected; however she had recently become aware of several of the candidate selections for those 75 openings, causing her inquiry;

7. Plaintiff requested information concerning her personnel file and the selection process o September 8, 2025 before contacting the appropriate Department of State-hiring authority.

8. Plaintiff's September 8 communication specifically requested information concerning whether anything in her personnel file had affected her application.

9. On September 9, 2025, KGS issued Plaintiff her first written disciplinary warning for alleged tardiness.

10. The warning stated that Plaintiff had been late on 25 occasions between August 1 and September 9, 2025, including lateness ranging from two to eighteen minutes.

11. Plaintiff disputed that the attendance records accurately reflected her actual attendance circumstances.

12. Plaintiff explained that, during her employment-beginning in May 2024, similar clock-in times had not previously resulted in discipline.

13. Plaintiff also explained that management had permitted employees to shorten lunch periods when they arrived late and that her own schedule requests had not been treated similarly.

14. Plaintiff expressly stated that she believed the write-up was retaliatory for her questions concerning the Passport Specialist position and her intention to contact Department of State personnel.

15. Plaintiff specifically raised concerns concerning nepotism, hiring of relatives and favorites, abuse of authority, and potential statutory and contractual conflicts of interest.

16. Plaintiff referenced 5 U.S.C. § 3110 and stated that contractors participating in the federal contracting environment were not necessarily immune from conflict-of-interest requirements contained in their contracts.
17. Plaintiff also stated that she was contacting employment attorneys concerning her options.
18. The September 9 communication therefore constituted protected activity to the extent the law recognizes Plaintiff's complaints as opposing unlawful discrimination, retaliation, or other protected conduct.
19. At minimum, the communication is evidence of Plaintiff's knowledge, complaints, protected activity, and the temporal sequence preceding-subsequent adverse actions.

VIII. SEPTEMBER 10 DISCLOSURE

1. On September 10, 2025, Plaintiff made a written disclosure concerning suspected nepotism, hiring irregularities, and abuse of authority involving Department of State and CGI Federal personnel at the Charleston Passport Center.
2. Plaintiff identified specific statutory concerns and referenced applicable federal law in her communications.
3. Plaintiff later pursued a contractor-whistleblower complaint.
4. Plaintiff initially submitted the matter to the United States Office of Special Counsel.
5. OSC determined that Plaintiff's contractor status created a jurisdictional problem and directed her toward the applicable Inspector General process.
6. Plaintiff subsequently filed with the Department of State Office of Inspector General.

7. The Department of State OIG ultimately closed the complaint and issued a determination stating that Plaintiff had a right to pursue a de novo action in federal court concerning the matters within the applicable statutory framework.
8. Plaintiff does not ask this Court to treat the OIG determination as a finding that Defendants violated the law.
9. Plaintiff alleges the disclosure as part of the chronology, as evidence of her protected activity where applicable, and as evidence relevant to motive and causation.

IX. SEPTEMBER 29 REASSIGNMENT

1. On September 29, 2025, Plaintiff was removed from her longstanding RTS hallway workstation and was moved to CSOP.
2. Plaintiff had remained at the RTS hallway location since approximately January 2025 despite multiple Customer Service rotations.
3. The workstation was located in an area where Mr. Wright regularly passed while performing his Department of State duties, and where he often stopped for a personal and romantic purposes.
4. The September 29 reassignment was unusual because Plaintiff and only one other employee were moved in a manner Plaintiff understood to be outside the ordinary customer service wide rotation process.
5. Plaintiff questioned management in writing concerning whether the reassignment was connected to the breakup with Mr. Wright.
6. Plaintiff's communication was sent to supervisors and management and is part of the employment record.

7. Plaintiff alleges that the timing and circumstances of the reassignment support an inference that management was responding to circumstances involving Mr. Wright and Plaintiff.

X. OCTOBER 2025 DISCOVERY CONCERNING MR. WRIGHT'S MARRIAGE

1. On October 14, 2025, Plaintiff contacted the Berkeley County court to determine whether Mr. Wright had actually been divorced.
2. Plaintiff found no divorce record.
3. Plaintiff confronted Mr. Wright concerning his representation that he was divorced.
4. Mr. Wright accused Plaintiff of "stalking" and "harassment" for investigating his marital status, although their romantic and sexual relationship had continued.
5. On October 21, 2025, Plaintiff located campaign material associated with Sylvia Wright in which she referred to herself as an "Air Force wife" in present-tense language.
6. Plaintiff understood this to indicate that Mr. Wright remained married.
7. Plaintiff sent Mr. Wright a screenshot of the campaign material and told him she knew he had misrepresented his marital status.
8. Plaintiff also communicated with Sylvia Wright concerning Mr. Wright's representations and conduct.
9. Plaintiff alleges that these communications intensified the personal conflict involving Plaintiff, Mr. Wright, and Sylvia Wright. The EEOC has also emphasized that the circumstances surrounding a contractor's removal can be important for determinations.

XI. SYLVIA WRIGHT'S CAMPAIGN ACTIVITY

1. On September 8, 2025, Sylvia Wright publicly announced her campaign activity through her campaign website.

2. Plaintiff will attach, where appropriate, the campaign webpage and contemporaneous reporting concerning that announcement.
3. Plaintiff alleges that the timing of Sylvia Wright's public campaign activity is relevant because Plaintiff later sent written communication to Sylvia Wright on November 11, 2025 concerning the romantic relationship and knowledge of the $10,000 withdrawal from Carlton Wright's bank account;
4. Plaintiff does not ask this Court to determine, in this employment action, whether Sylvia Wright or her campaign violated South Carolina campaign-finance law.
5. Instead, Plaintiff alleges that the communications and surrounding circumstances are relevant to motive, knowledge, potential communications with persons at the Charleston Passport Center, and the escalating conflict immediately preceding Plaintiff's removal and termination.
6. Plaintiff intends to provide contemporaneous-public reporting, campaign disclosures, and the ethics complaint/report as evidence of the chronology and circumstances.

XII. OCTOBER 23 LUNCH DIRECTIVE

1. On October 23, 2025, Plaintiff was instructed to change her lunch period.
2. Plaintiff believed the directive was connected to circumstances involving Mr. Wright,
3. Plaintiff requested that the directive be provided to her in writing; and verbally contested the directive and treatment as disparaging between Carlton Wright and herself to her fellow co-workers and within the hearing of the supervisor;
4. After Plaintiff requested written confirmation, management withdrew or the directive.
5. Plaintiff later learned that her request for written confirmation of the lunch schedule change and her contesting of the disparaging treatment was cited as one of the reasons

supporting her termination and was later documented in the contractors justifications for termination via email on November 17;

6. Plaintiff alleges that using a request for written confirmation of an instruction that management subsequently withdrew as a basis for termination supports an inference of pretext and retaliation.

XIII. OCTOBER 26, 2025 $10,000 COMMUNICATION

1. On October 26, 2025, Mr. Wright communicated to Plaintiff that approximately $10,000 had been taken from his account.
2. Mr. Wright indicated that he knew who had taken the money and who had instructed the person to take it.
3. Plaintiff alleges that Mr. Wright subsequently stated that the money had been taken by Sylvia Wright through their adult daughter and subsequently used on her campaign.
4. Plaintiff alleges that the timing followed Plaintiff's October 21 communication to Sylvia Wright.
5. Plaintiff later learned information suggesting that the amount at issue was approximately the same amount reflected in subsequent campaign-related reporting discrepancies.
6. Plaintiff intends to attach public campaign reports and contemporaneous reporting concerning the campaign's finances, including an ethics complaint/report concerning approximately$10,000 in campaign funds that campaign reports and ethics complaint indicate are unaccounted for.
7. Plaintiff pleads these facts cautiously and does not ask this Court to determine that the campaign funds were unlawfully obtained or used.

7. Plaintiff alleges that the evidence is relevant because it may establish a motive for Sylvia Wright to communicate with or influence persons connected to Plaintiff's employment and may explain the escalating conflict immediately before Plaintiff's termination; as the Plaintiffs now understands South Carolina law provides that, within an election cycle, a candidate for statewide office may not solicit or accept, and a person may not give or offer, an individual contribution exceeding $3,500. S.C. Code § 8-13-1314(A)(1)(a). The statute provides a $3,500 limit for a candidate for statewide office.

XIV. NOVEMBER 10, 2025 COMMUNICATION

1. On November 10, 2025, Plaintiff communicated with Sylvia Wright concerning Mr. Wright's continued romantic conduct and the circumstances involving Plaintiff, Mr. Wright, and Sylvia Wright via a written message
2. Plaintiffs message to Sylvia Wright stated she did not want to be involved in a "love triangle" and that she knew about the $10,000 that had been removed from Carlton Wrights account by their adult daughter. Plaintiff now understands the current statutory cap for donations is $3500 per donor, and Plaintiffs knowledge of and documenting of these event events could have created unwanted exposure of those events, and heightened tensions between Carlton Wright and Sylvia Wright;
3. Plaintiff alleges that this communication occurred only days before the unexplained request to remove Plaintiff from the Charleston Passport Center.
4. Plaintiff does not presently know whether Sylvia Wright communicated with KGS, CGI Federal, Department of State personnel, or other persons concerning Plaintiff.

5. Plaintiff requests discovery concerning whether such communications occurred.

XV. NOVEMBER 14, 2025 REQUEST TO REMOVE PLAINTIFF

1. On November 14, 2025, at approximately 7:58 p.m., KGS sent Plaintiff an email stating: "This email is to inform you that your assignment has ended, effective immediately. Please do not contact anyone from CGI and do not return to the agency."

1. The email further stated that there had been "continuous concerns, as well as disruptions in the work area, that ultimately have resulted in the request to remove you from the assignment."
2. KGS did not identify who requested Plaintiff's removal.
3. KGS did not identify what specific conduct constituted the alleged "continuous concerns" or "disruptions" in the email notifying Plaintiff of the removal.
4. The identity of the person or entity who made the request is a critical factual issue.
5. Plaintiff alleges on information and belief that the request came from, was approved by, or was materially influenced by personnel within the CGI Federal and/or Department of State supervisory structure.
6. Plaintiff further alleges that the request may have been influenced by communications concerning Mr. Wright, Sylvia Wright, Plaintiff's relationship with Mr. Wright, Plaintiff's complaints, or Plaintiff's protected disclosures.
7. Plaintiff cannot presently identify the person who made the request because Defendants have not disclosed that information.
8. Plaintiff therefore requests discovery of the request itself, all communications concerning it, the identity of the requester, the authority under which it was made, and all

communications between KGS, CGI Federal, and Department ofState personnel concerning Plaintiff.

XVI. NOVEMBER 14–17 TERMINATION

1. The November 14 email purported to end Plaintiff's assignment immediately.
2. Plaintiff nevertheless contends that the employment relationship and termination process were not completed in accordance with applicable procedures.
3. Plaintiff reported for duty on November 17, 2025.
4. CGI Federal supervisors and management approached Plaintiff when she reported for duty.
5. Plaintiff sought separation documentation.
6. Plaintiff therefore alleges that November 14 andNovember 17 are both relevant dates to the termination chronology.
7. Plaintiff requests discovery concerning the dateDefendants internally recorded as her actual termination date.
8. Plaintiff further alleges that information used to justify the termination came from CGI Federal supervisory personnel.
9. Plaintiff alleges that the termination documentation relied, at least in part, upon conduct that had previously been accepted, conduct for which management had withdrawn an instruction, and Plaintiff's request that workplace instructions be documented.
10. Plaintiff alleges that the shifting and post hoc nature of the stated reasons supports an inference of pretext.

XVII. SEX DISCRIMINATION

1. Plaintiff incorporates all preceding paragraphs.

2. Plaintiff alleges that Defendants subjected her to adverse employment actions because of her sex and because of circumstances arising from her romantic relationship with a male Department of State employee.
3. Plaintiff does not contend that the mere existence of a romantic relationship automatically constitutes sex discrimination.
4. Rather, Plaintiff alleges that the evidence will show that she, as the woman involved in the relationship, was subjected to scrutiny, reassignment, schedule-interference, discipline, removal, and termination in circumstances that were not imposed equally upon Mr. Wright.
5. Plaintiff alleges that the employment response to the relationship and resulting conflict was directed disproportionately toward her.
6. Plaintiff further alleges that Defendants' actions must be examined for sex-based stereotypes and differential treatment concerning Plaintiff's role as the woman involved in the relationship.
7. Plaintiff requests discovery concerning similarly situated male and female contractors, disciplinary records, attendance practices, workstation assignments, schedule changes, and treatment of employees involved in workplace relationships.

XVIII. RETALIATION

1. Plaintiff incorporates all preceding paragraphs.
2. Plaintiff engaged in protected activity by complaining about treatment she reasonably believed was connected to sex-based discrimination and by questioning whether workplace actions were related to her status as the woman involved in the relationship.

3. Plaintiff expressly questioned management concerning whether the September 29 reassignment was related to her breakup with Mr. Wright.
4. Plaintiff objected to the October 23 lunch directive and requested written confirmation.
5. Plaintiff communicated concerns concerning unequal treatment and double standards in attendance and scheduling.
6. Plaintiff also made written disclosures concerning suspected nepotism, abuse of authority, and improper hiring practices.
7. The adverse employment actions followed these complaints and disclosures in close temporal proximity.
8. Plaintiff alleges that the September 9 discipline, September 29 reassignment, November 14 removal, and termination were retaliatory, in whole or in part, for protected activity.
9. Plaintiff further alleges that the use of her request for written confirmation of the October 23 directive as a termination reason is evidence of retaliatory motive and pretext.

XIX. DEPARTMENT OF STATE AS JOINT EMPLOYER

1. Plaintiff incorporates all preceding paragraphs.
2. Plaintiff alleges that the Department of State was her joint employer for purposes of applicable federal employment-discrimination law.
3. Plaintiff recognizes that KGS issued her paycheck and maintained the formal private employment relationship.
4. Plaintiff nevertheless alleges that the Department-of State exercised substantial control over the means and manner of her work.
5. Department of State personnel supervised Plaintiff.
6. A Department of State employee served as the supervisor above Plaintiff's section.

7. Department of State personnel could changePlaintiff's workstation.
8. Department of State personnel could affectPlaintiff's daily work assignments.
9. Plaintiff performed work directly supporting Department of State Passport Specialists.
10. Plaintiff was required to follow instructions from Department of State adjudicators in performing her assigned duties.
11. Department of State personnel participated in Plaintiff's training and required Plaintiff to complete Department of State training.
12. Department of State supplied equipment and systems used by Plaintiff.
13. Department of State personnel were integrated into the chain of command governing Plaintiff's day-to-day work.
14. Department of State personnel had authority concerning access to and assignment at the Charleston Passport Center.
15. Plaintiff alleges that Department of State personnel possessed authority to request or cause removal of contractor personnel from the CPC.
16. KGS's November 14, 2025 email establishes that a request to remove Plaintiff from her assignment actually occurred.
17. Plaintiff alleges that the Department of State therefore exercised materially greater control over her employment than a passive customer merely receiving services from an independent contractor.
18. Plaintiff further alleges that the actual working relationship, rather than the labels contained in the contracting documents, should control the joint-employer analysis.

19. Plaintiff pleads the joint-employer theory in the alternative because the precise contractual allocation of authority and the identity of the person who requested Plaintiff's removal are presently unknown and are largely within Defendants' possession.
20. Plaintiff requests discovery concerning the contracts, statements of work, organizational charts, supervisory structures, policies, training records, removal procedures, communications, and personnel records necessary to determine the Department of State's actual control.
21. Plaintiff further alleges that the Department of State's role is distinguishable from a situation in which the government merely provides the workplace or customer requirements while the contractor independently supervises the worker.

XX. CGI FEDERAL AS JOINT EMPLOYER

1. Plaintiff incorporates all preceding paragraphs.
2. CGI Federal was the principal contractor supporting the Department of State at the Charleston Passport Center.
3. Plaintiff's direct supervisor was a CGI Federal employee.
4. CGI Federal personnel exercised authority overPlaintiff's daily work.
5. CGI Federal personnel could change Plaintiff's workstation and assigned duties.
6. CGI Federal personnel participated in training.
7. CGI Federal supplied equipment and systems used by Plaintiff.
8. CGI Federal personnel participated in the events surrounding Plaintiff's removal and termination.
9. Plaintiff alleges that CGI Federal therefore exercised sufficient control to constitute a joint employer under applicable law.

## XXI. EVIDENCE CONCERNING SYLVIA WRIGHT AND CAMPAIGN REPORTING

1. Plaintiff incorporates all preceding paragraphs.
2. Plaintiff intends to provide publicly available campaign reports concerning Sylvia Wright's campaign.
3. Plaintiff also intends to provide a contemporaneous news report concerning an ethics complaint alleging that approximately $10,000 in campaign funds were unaccounted for.
4. Plaintiff alleges that the amount identified in that reporting is approximately the same amount thatMr. Wright told Plaintiff had been taken from his account.
5. Plaintiff alleges that Mr. Wright subsequently attributed the withdrawal to Sylvia Wright through their adult daughter.
6. Plaintiff alleges that Plaintiff's communications concerning these matters created a substantial personal conflict immediately before her removal and termination.
7. Plaintiff does not ask this Court to determine campaign-finance liability in this employment action.
8. Plaintiff alleges that these facts are relevant to determining motive, knowledge, communications, witness relationships, and whether persons outside KGS nevertheless influenced the employment decisions.
9. Plaintiff requests discovery concerning communications between Sylvia Wright and KGS, CGI Federal, Department of State personnel, Carlton Wright, or any other person involved in Plaintiff's employment.

## XXII. CONTINUING EMPLOYMENT CONSEQUENCES

1. Plaintiff incorporates all preceding paragraphs.

2. Plaintiff's termination has continued to affect her ability to obtain federal-contractor employment.
3. On July 9, 2026, a federal-contractor employment offer in the immigration field was rescinded following a background check.
4. Plaintiff was informed that the rescission was specifically related to her prior termination from theCharleston Passport Center.
5. Plaintiff also participated in another federal-contractor interview process that did not proceed after Plaintiff disclosed the Charleston Passport Center termination.
6. Plaintiff alleges that the termination has therefore caused continuing economic and professional harm.
7. Plaintiff requests discovery concerning what information about her termination was provided to prospective employers, by whom, when, and from what records.

## XXIII. ADMINISTRATIVE EXHAUSTION

1. Plaintiff timely pursued administrative remedies concerning the discrimination and retaliation claims asserted against KGS and CGI Federal.
2. Plaintiff also identified the Department of State as a respondent in her EEOC charge.
3. The EEOC investigator accepted KGS and CGI Federal as respondents but did not accept theDepartment of State as a respondent.
4. The EEOC subsequently issued Notices of Right to Sue concerning KGS and CGI Federal.
5. Plaintiff alleges that the EEOC's refusal to investigate the Department of State should not prevent Plaintiff from presenting to this Court the factual and legal question whether the Department of State was her joint employer.

6. Plaintiff specifically informed the EEOC of the Department of State's supervisory involvement and requested investigation into the Department's role.
7. The EEOC did not make a merits determination concerning the allegations.
8. The EEOC's September 15, 2026 notices expressly state that the EEOC "makes no determination about whether further investigation would establish violations of the statute" and that the determination "does not mean the claims have no merit."
9. Plaintiff attaches the Notices of Right to Sue as exhibits.

XXIV. FIRST CAUSE OF ACTION

TITLE VII SEX DISCRIMINATION

AGAINST KGS, CGI FEDERAL, AND, TO THE EXTENT APPLICABLE, THE DEPARTMENT OF STATE

1. Plaintiff incorporates all preceding paragraphs.
2. Title VII prohibits covered employers from discriminating against an individual because of sex.
3. Plaintiff was subjected to adverse employment actions, including discipline, reassignment, removal from her assignment, and termination.
4. Plaintiff alleges that sex was a motivating factor in those actions.
5. Plaintiff further alleges that the employment-response to the relationship and its aftermath treated Plaintiff, the woman involved in the relationship, differently from the male Department of State employee involved.
6. Plaintiff alleges that the circumstances warrant discovery and adjudication concerning sex-based stereotyping, differential treatment, and whetherPlaintiff was subjected to employment consequences because of her sex and relationship circumstances.

7. KGS and CGI Federal are liable to the extent they were Plaintiff's employers and violated Title VII.
8. The Department of State is liable to the extent the Court determines that Plaintiff was an employee or joint employee of the Department of State under applicable federal employment law.

XXV. SECOND CAUSE OF ACTION

TITLE VII RETALIATION

AGAINST KGS, CGI FEDERAL, AND, TO THE EXTENT APPLICABLE, THE DEPARTMENT OF STATE

1. Plaintiff incorporates all preceding paragraphs.
2. Plaintiff engaged in protected opposition to conduct she reasonably believed was discriminatory.
3. Plaintiff complained about differential treatment, questioned whether employment actions were connected to her relationship with Mr. Wright, objected to unusual workplace directives, and communicated concerns concerning sex-based treatment.
4. Plaintiff thereafter experienced discipline, reassignment, removal, and termination.
5. Plaintiff alleges that the temporal sequence, changing explanations, and reliance upon conduct previously accepted or withdrawn support an inference of retaliation.
6. Plaintiff further alleges that CGI Federal and Department of State personnel participated in or influenced the employment actions.
7. Plaintiff seeks all relief authorized by applicable law.

XXVI. THIRD CAUSE OF ACTION

FEDERAL-AGENCY EMPLOYMENT DISCRIMINATION / JOINT-EMPLOYER THEORY

AGAINST THE DEPARTMENT OF STATE

1. Plaintiff incorporates all preceding paragraphs.
2. Plaintiff pleads this cause of action in the alternative to her private-employer Title VII claims.
3. Plaintiff alleges that, notwithstanding her formal payroll relationship with KGS, the Department of State exercised sufficient control over the means and manner of her work to constitute an employer or joint employer for federal EEO purposes.
4. The Department of State's control included direct supervision, work assignment, workstation changes, training requirements, equipment and systems, substantive work instructions, operational integration, and authority concerning removal from the assignment.
5. Plaintiff alleges that Department of State personnel participated in or influenced the adverse employment actions.
6. Plaintiff therefore seeks relief under the federal employment-discrimination provisions applicable if the Court determines that Plaintiff qualifies as an employee of the Department of State.
7. Plaintiff recognizes that the Court must determine the proper statutory framework after considering the actual employment relationship.

XXVII. FOURTH CAUSE OF ACTION

RETALIATION ARISING FROM PROTECTED DISCLOSURES

TO THE EXTENT COGNIZABLE UNDER APPLICABLE FEDERAL LAW

1. Plaintiff incorporates all preceding paragraphs.

2. Plaintiff made written disclosures concerning suspected nepotism, abuse of authority, hiring irregularities, statutory violations, and conflicts of interest.
3. Plaintiff identified specific statutory provisions and expressly warned that contractor status did not necessarily immunize CGI Federal or other contractors from applicable contractual and federal requirements.
4. Plaintiff initially pursued the matter through the Office of Special Counsel and then through theDepartment of State Office of Inspector General after being advised that her contractor status affected OSC jurisdiction.
5. Plaintiff's OIG complaint was closed after the OIG determined that the disclosure, as submitted, did not satisfy the statutory standard for protected disclosure.
6. Plaintiff does not ask this Court to reverse that administrative determination through this count.
7. Plaintiff pleads the claim only to the extent a private cause of action, de novo judicial review, or other federal remedy is available under the specific statute applicable to the disclosure.
8. Plaintiff reserves the right to amend this count after discovery and further determination of the governing statutory cause of action.

XXVIII. DAMAGES

1. Plaintiff has suffered and continues to suffer economic losses, including lost wages, lost employment opportunities, lost benefits, diminished future employment opportunities, and other financial damages.
2. Plaintiff has suffered professional and reputational harm.
3. Plaintiff has suffered emotional distress and other non-economic harm.

4. Plaintiff's subsequent federal-contractor employment opportunities have been affected by the record of her termination.
5. Plaintiff seeks back pay, front pay where authorized, compensatory damages where authorized, equitable relief, correction of employment records, reinstatement or comparable-employment relief where appropriate, attorney's fees and costs where authorized, and all other relief available under applicable law.
6. Plaintiff does not presently have access to all records necessary to calculate her damages precisely and will supplement her damages calculation as discovery proceeds.

XXIX. REQUEST FOR PRESERVATION AND DISCOVERY

1. Plaintiff requests that Defendants preserve all electronically stored information and documents concerning:

a. Plaintiff's employment;

b. Plaintiff's termination;

c. Plaintiff's September 8–10, 2025 communications;

d. Plaintiff's September 9 discipline;

e. Plaintiff's September 29 reassignment;

f. Plaintiff's communications concerning Mr. Wright;

g. Plaintiff's October 23 lunch directive;

h. Plaintiff's November 14 removal;

i. the identity of the person who requested Plaintiff's removal;

j. communications between KGS and CGI Federal concerning Plaintiff;

k. communications between CGI Federal and Department of State personnel concerning Plaintiff;

l. communications between Department of State personnel and KGS concerning Plaintiff;

m. communications involving Carlton Wright concerning Plaintiff;

n. communications involving Sylvia Wright concerning Plaintiff;

o. Plaintiff's attendance and performance records;

p. records of similarly situated employees;

q. policies governing contractor removal;

r. the contracts and statements of work governing KGS, CGI Federal, and the Department of State;

s. organizational charts and supervisory structures;

t. training records;

u. equipment and system-access records;

v. personnel records concerning Plaintiff;

w. communications concerning Plaintiff's subsequent employment opportunities; and

x. any investigation or complaint concerning Plaintiff relied upon in an employment decision.

XXX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on the claims established by the evidence;

B. Determine, to the extent supported by the evidence and applicable law, that CGI Federal and/or the Department of State were Plaintiff's joint employers;

C. Award back pay and lost benefits;

D. Award front pay or other prospective relief where appropriate;

E. Award compensatory damages to the extent authorized by law;

F. Order appropriate equitable relief;

G. Order correction or removal of inaccurate or discriminatory termination records where authorized;

H. Award damages for continuing employment losses caused by the termination where authorized;

I. Award reasonable attorney's fees and litigation costs to the extent authorized by law;

J. Award pre- and post-judgment interest where authorized;

K. Grant such other relief as the Court determines is just and proper.

XXXI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: 10/2/26

Nicole Anastasia Gray
Plaintiff, Pro Se
119 Alwyn Boulevard
Summerville, South Carolina 29485
Telephone: 803-724-7144
Email: nicoleanastasia@rocketmail.com

**EXHIBIT INDEX**

Exhibit 1 — Charge of Discrimination with attached and incorporated Exhibits; sent via US Certified Mail to the EEOC for filing
Exhibit 2 — EEOC Charge No. 415-2026-02588, including the charge and signed verification.
Exhibit 3 —Notice of Right to Sue for EEOC Charge No. 415-2026-02588
Exhibit 4 — EEOC Charge No. 415-2026-02650, including the charge and signed verification, Section 83 Request and FOIA response, and EEOC Correspondence/Email concerning records issues.
Exhibit 5 — Notice of Right to Sue for EEOC Charge No. 415-2026-02650
Exhibit 6 — Additional public records concerning the September 8, 2025 campaign announcement;
Exhibit 7 — September 3, 2026 signed ethics complaint concerning Sylvia Wright, via September 9, 2026 FITSNews article reporting the ethics complaint.

Exhibit 8 — Sylvia Wright South Carolina public campaign-finance reports and disclosure/campaign filings, indicating approximately $10,000 negative unaccounted for funds