# Exhibit # 1, 2 and 4

Nicole Gray
119 Alwyn Blvd.
Summerville, SC 29485
Telephone: 803-724-7144
Email: nicoleanastasia@rocketmail.com

September 3, 2026

U.S. Equal Employment Opportunity Commission
Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406
Telephone: (912) 358-2810

RE: FORMAL FILING OF CHARGE OF DISCRIMINATION BY LETTER
EEOC Inquiry No. 415-2026-02588
Charging Party: Nicole Gray
Respondents: Kelly Government Solutions (KGS); CGI Federal; United States Department of State, Bureau of Consular Affairs / Charleston Passport Center

Dear EEOC Intake Officer:

I am writing to formally file my Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in connection with my previously submitted inquiry, EEOC Inquiry No. 415-2026-02588.

The EEOC acknowledged receipt of my inquiry on September 1, 2026. I have attempted to proceed through the EEOC Public Portal and schedule the required intake interview. However, the scheduling system has not provided an available appointment. Because my filing deadline is imminent, I am submitting this letter together with my completed and signed Charge of Discrimination pursuant to the EEOC's instructions concerning filing by mail when 60 days or fewer remain before the deadline.

I am therefore submitting this signed letter with its fully incorporated attachment, specifically the signed Charge of Discrimination, for the purpose of filing my charge, rather than waiting for an appointment to become available through the Public Portal.

I respectfully request that the EEOC accept this submission, together with the attached signed Charge of Discrimination, as my formal Charge of Discrimination and associate it with EEOC Inquiry No. 415-2026-02588.

The letter attachment titled Charge of Discrimination is incorporated into this letter/submission in its entirety. It provides additional factual detail concerning the alleged discriminatory and retaliatory conduct and should be treated as part of this filing.

I respectfully request that the EEOC use the date of this submission as the filing date to the extent permitted by applicable law and EEOC procedures, and that the EEOC provide written confirmation of receipt and the filing date assigned to the Charge.

I am transmitting this filing through multiple methods, including certified mail, fax, and email, because of the imminent filing deadline and the lack of available appointments through the Public Portal. I respectfully request that all versions of this submission be associated with EEOC Inquiry No. 415-2026-02588.

I understand that the EEOC may contact me if additional information is required. I remain available to participate in an intake interview or provide any additional information necessary for the EEOC to process this Charge.

Thank you for your prompt attention to this time-sensitive filing.

Sincerely,

Nicole Gray

Nicole Gray
119 Alwyn Blvd.
Summerville, SC 29485
Telephone: 803-724-7144
Email: nicoleanastasia@rocketmail.com

**Attachment :** Signed Charge of Discrimination

**CHARGE OF DISCRIMINATION**

**Charging Party:**

Nicole Anastasia Gray
119 Alwyn Boulevard
Summerville, SC 29485
Email: nicoleanastasia@rocketmail.com
Telephone: 803-724-7144

**Respondents:**

**Kelly Government Solutions (KGS)**
8th floor
999 West Big Beaver Road
Troy, Michigan 48084

**CGI Federal**
1828 L St NW #520, Washington, DC 20036

**United States Department of State, Bureau of Consular Affairs / Charleston Passport Center**
Bureau of Consular Affairs
Charleston Passport Center
269 Holland St, North Charleston, SC 29405

**Basis of Charge:**
Sex, including sex-based discrimination arising from a workplace romantic relationship; sexual harassment/sex-based harassment to the extent supported by the investigation; retaliation for opposing or reporting sex-based discriminatory treatment; and discriminatory and retaliatory termination and other adverse employment actions. Possibility of element of Quid Pro Quo / Relationship-Related Sexual Harassment. Interference with Employment / Third-Party Influence, to the extent within EEOC jurisdiction

**Dates of Discrimination:**
August 28, 2025 through July 9, 2026, with the principal employment actions occurring September 9, 2025 through November 17, 2025. The Charging Party also experienced continuing employment consequences after termination, including rescission of a federal-contractor employment offer on July 9, 2026 based specifically upon the prior termination from their position at the Charleston Passport Center.

**STATEMENT OF CHARGE**

I was employed by Kelly Government Solutions ("KGS"), a federal contractor and subcontractor to CGI Federal, and performed my work at the Department of State's Charleston Passport Center ("CPC") in North Charleston, South Carolina.

I allege that I was subjected to sex-based discrimination, harassment and/or discriminatory treatment, retaliation, and termination because of my romantic relationship with a male Department of State employee, Carlton Wright, and because of circumstances arising from and following a change in that relationship. I further allege that KGS, CGI Federal, and/or Department of State personnel participated in, influenced, requested, facilitated, or acquiesced in adverse actions against me.

I believe the adverse employment actions were connected not simply to the existence of a romantic relationship, but to the **change in the relationship, the conflict that followed, the manner in which I was treated as a woman involved in that relationship, and the response of workplace personnel to circumstances involving Mr. Wright and me.**

I further allege that I was treated differently because I am a woman and that the employment consequences imposed upon me should be investigated to determine whether sex, sex-based stereotypes, sexual or romantic conduct, or my opposition to sex-based treatment was a motivating factor.

I do not presently know which individual ultimately initiated the request that I be removed from my assignment at the Charleston Passport Center. I therefore specifically request that EEOC investigate whether KGS, CGI Federal, Department of State personnel, Carlton Wright, or any other person communicated information about me or participated in, requested, recommended, facilitated, or influenced my removal, discipline, or termination.

**LEGAL AND STATUTORY AUTHORITIES**

This Charge is brought under applicable federal laws prohibiting employment discrimination and retaliation, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 2000e-3. The retaliation provisions of Title VII prohibit an employer from discriminating against an employee because the employee has opposed conduct made unlawful under Title VII or has participated in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). E EEOC

To the extent applicable, I also rely upon the corresponding implementing regulations and applicable federal-contractor requirements governing equal employment opportunity and nondiscrimination.

Because my employment occurred in South Carolina and I was employed by a federal contractor rather than as a federal employee of the Department of State, I contend that the applicable administrative filing period for qualifying Title VII claims is 300 days pursuant to 42 U.S.C. § 2000e-5(e)(1) and 29 C.F.R. § 1601.13. The EEOC recognizes that the 180-day period is

extended to 300 days where the applicable state or local agency enforces a law prohibiting discrimination on the same basis. EEOC

I further reserve and assert any other claims, protections, or remedies supported by the facts and applicable law, including those arising from my status as an employee of a federal contractor and from the involvement of personnel employed by CGI Federal and/or the Department of State.

## I. MY EMPLOYMENT AND WORKING RELATIONSHIP WITH THE DEPARTMENT OF STATE

I began working at the Charleston Passport Center as a contractor in approximately May 2024 in a Level II position.

Before working in Customer Service, I worked in the Batch Storage Room ("BSR"), where one of my responsibilities was distributing batches of passport applications to Department of State Passport Specialists for adjudication.

It was in this capacity that I met Carlton Wright, a Department of State Passport Specialist.

I subsequently received two offers for promotion after interviewing for such, including a Level III position in Processing and a Level III position in Customer Service. My security clearance was redone in connection with the position change, and I began my Level III Customer Service position in approximately November 2024.

In Customer Service, my work continued to directly support Department of State Passport Specialists. Among other duties, I prepared Information Request Letters ("IRLs") for Passport Specialists, including Mr. Wright and other Passport Specialists.

Mr. Wright and I therefore worked on the same floor, had frequent contact, and were in a workplace environment in which his Department of State position regularly intersected with my contractor duties.

At one point, my supervisor communicated with Mr. Wright's supervisor and instructed that Mr. Wright stop repeatedly coming to my desk/cubicle to speak with me.

This fact is important because Mr. Wright was not simply a private individual with whom I happened to have a relationship. He was a Department of State Passport Specialist working in the same facility in which I performed my contractor duties and interacting with me as part of the same operational environment.

I believe the employment actions that began shortly after the relationship changed should be investigated in light of this context and in light of whether I was treated differently because I was the woman involved in the relationship and the resulting conflict.

## II. ROMANTIC RELATIONSHIP WITH DEPARTMENT OF STATE EMPLOYEE

Mr. Wright and I began a romantic relationship in approximately October 2024.

The relationship continued for approximately a year.

On August 27, 2025, Mr. Wright sent me a text message indicating that his final divorce hearing was scheduled for September 3, 2025. During that week, he came to work wearing a bow tie and told me he was going to his divorce hearing.

On August 28, 2025, Mr. Wright and I officially ended the relationship.

Despite the breakup, Mr. Wright continued to engage in romantic and sexual conduct with me during September and October 2025 while continuing to represent to me that he was divorced.

During this period, Mr. Wright remained sporadically romantic and sexual with me while simultaneously maintaining that we were "broken up." This conduct created substantial confusion concerning the status of our relationship.

## III. ADVERSE WORKPLACE ACTION BEGINS AFTER THE BREAKUP

On September 9, 2025, shortly after the August 28 breakup, I received my first-ever disciplinary write-up for alleged tardiness.

I had previously received promotions despite similar clock-in times, and the September 9 write-up was unusual in light of my prior employment history and performance.

I had also been retained in the same RTS hallway cubicle/station since approximately January 2025 despite multiple Customer Service rotations occurring around me.

I had remained in that location while performing strongly in production and meeting performance expectations.

On September 29, 2025, I was removed from my RTS hallway cubicle and moved to CSOP.

This was not a normal Customer Service-wide rotation. Instead, management moved only me and swapped me with one other employee.

The move was significant because my RTS workstation was located where Mr. Wright repeatedly passed my desk on his way to and from BSR to obtain batches of applications for adjudication.

The move therefore separated me from the location in which Mr. Wright and I had frequent contact.

Because the reassignment occurred approximately one month after our breakup, and because of the unusual manner in which it was performed, I became concerned that the reassignment was related to my relationship with Mr. Wright.

I subsequently communicated with my supervisors and asked whether the reassignment was related to the breakup. I request that EEOC review the complete email chain concerning that inquiry and the responses from management.

I believe the timing and circumstances of this reassignment are relevant to whether the treatment imposed upon me was connected to my sex, my relationship with Mr. Wright, or the conflict surrounding that relationship.

## IV. MR. WRIGHT CONTINUED TO MISREPRESENT HIS MARITAL STATUS

In September and October 2025, although Mr. Wright and I remained officially separated, he continued romantic and sexual conduct with me while behaving inconsistently and indicating that he was struggling with the decision to end the relationship.

On October 14, 2025, because his behavior did not make sense to me, I contacted the Berkeley County courthouse to determine whether his claimed divorce had actually occurred.

I found no record of the divorce.

I confronted Mr. Wright by text and asked whether he was actually divorced and whether he was considering returning to his wife, Sylvia Wright.

Mr. Wright responded that checking whether he was divorced was "borderline stalking" and nevertheless stated in the same exchange that he could "100%" say that he and his wife were divorced.

I explained that I had checked because of our approximately year-long romantic relationship and because he had previously lied to me about being married.

Mr. Wright stated that he was going to block me and accused me of harassment.

I explained that he had been in my bed approximately a week earlier and that we had engaged in sexual activity, making my question about whether he was actually divorced a question arising from our ongoing relationship rather than harassment.

Mr. Wright then insisted that we speak by telephone.

I declined because I did not want him to believe I was harassing him, but he continued to insist that we talk.

These communications are relevant because Mr. Wright characterized my efforts to understand the status of our relationship as "harassment" and "stalking." I do not presently know whether he subsequently communicated those accusations to KGS, CGI Federal, Department of State personnel, or anyone else involved in my employment.

I specifically request that EEOC investigate whether he did so.

## V. DISCOVERY THAT MR. WRIGHT HAD LIED ABOUT THE DIVORCE

On October 21, 2025, I located a campaign video posted by Sylvia Wright in which she referred to herself as an "Air Force wife," using present-tense language indicating that she remained married to Mr. Wright.

I realized that Mr. Wright had apparently lied to me about being divorced.

I sent Mr. Wright a text message containing a screenshot of the campaign video and told him that I knew he had lied to me about being divorced.

On October 21, 2025, I also sent an email to Sylvia Wright informing her that Mr. Wright had again lied to me about being married.

I informed her of multiple indiscretions that Mr. Wright had disclosed to me during our relationship.

Mr. Wright was copied on this email.

On October 26, 2025, Mr. Wright sent me a text message stating that approximately $10,000 was missing from his account and that he was extremely angry about it.

He stated that he knew who had taken the money and who had instructed that person to take it.

He later confirmed that the money had been taken by his wife after she received my October 21 email.

These events are relevant because they demonstrate the existence of an intensely personal conflict involving Mr. Wright, his wife, and me immediately before my employment was terminated.

I am not asking EEOC to determine whether any private dispute concerning money was lawful. I am asking EEOC to determine whether the conflict, and communications arising from it, affected my employment in violation of Title VII.

## VI. OCTOBER 23 LUNCH-SCHEDULE INCIDENT

On October 23, 2025, management instructed me to change my lunch period.

The requested lunch period differed from my customary lunch period and would have separated my lunch schedule from Mr. Wright's.

I objected to being required to change my lunch schedule under the circumstances, explaining that Mr. Wright was the person who had created the underlying situation by misrepresenting his marital status.

I requested that the directive be provided to me in writing.

After I requested written confirmation, management changed its position and told me that I did not have to change my lunch break.

Despite withdrawing the directive, the contractor later cited my request that the directive be provided in writing as a reason supporting my termination.

I believe this sequence is evidence of pretext and/or retaliatory treatment.

The original directive, my request for written confirmation, my expression of displeasure to my colleagues that management/supervisors were having me (the woman) change her lunch time as a result of the conflict with Carlton and his wife involving $10,000 after my disclosures to her, management's withdrawal of the directive, and all later documents citing that request should be obtained and compared.

## VII. NOVEMBER 10, 2025 COMMUNICATION WITH SYLVIA WRIGHT

On November 10, 2025, I contacted Sylvia Wright and informed her that, despite the fact that she had taken approximately $10,000 from Mr. Wright's account, Mr. Wright continued to behave romantically toward me.

I told her that I did not want to be in a "love triangle" and asked her to confirm whether she and Mr. Wright were no longer together.

This communication is relevant to the timing and circumstances immediately preceding the termination of my employment. I do not presently know whether Sylvia Wright communicated with KGS, CGI Federal, Department of State personnel, or anyone else involved in my employment. I request that EEOC investigate whether she did as I have received text messages from Carlton Write indicating his concern that she may have been involved with my employment matters and have "friends" and connections at the Passport Center.

## VIII. NOVEMBER 14, 2025 "REQUEST TO REMOVE" FROM ASSIGNMENT

On Friday, November 14, 2025, at approximately 7:58 p.m., KGS sent me an email informing me that there had been a "request to remove" me from my assignment.

The communication did not identify who made the request.

This is a critical fact.

My employment assignment was performed at the Charleston Passport Center under the CGI Federal/Department of State contracting environment.

I therefore request that EEOC determine:

1. Who made the request to remove me from the assignment;
2. Whether the request originated with CGI Federal or Department of State personnel;
3. Whether Carlton Wright was involved in making, initiating, recommending, communicating, or facilitating the request;
4. Whether Carlton Wright made an allegation to KGS, CGI Federal or Department of State personnel that I had "harassed" or "stalked" him (as he had done via a text message to me upon mu inquiry if he was in fact divorced)
5. Whether Sylvia Wright communicated with any person involved in my employment, KGS, CGI Federal or Department of State personnel or otherwise;
6. Whether any Department of State employee communicated with KGS or CGI Federal concerning me;
7. Whether any CGI Federal employee communicated with KGS or Department of State personnel concerning me;
8. When the request was made;
9. Why the request was made;
10. Who had authority to make or approve such a request; and
11. Whether the request was motivated, in whole or in part, by my sex, my relationship with Mr. Wright, the termination of that relationship, my communications concerning Mr. Wright's marital status, or my opposition to the treatment I was receiving because of the relationship and circumstances surrounding it.

The identity of the person or entity making this request is not presently known to me, but the information should be available through the respondents' records.

## IX. NOVEMBER 14–17, 2025 TERMINATION

KGS also sent an email dated November 14, 2025, purporting to terminate my employment.

However, I contend that the termination did not comply with the applicable procedures and requirements governing federal contractors. And specifically, I contend that the CGI Federal procedures and/or handbook requirements applicable to termination were not followed by my direct supervisor, who was a CGI Federal employee. The other supervisors overseeing my work were also CGI Federal employees, with the exception of the Customer Service Manager, who oversaw the supervisors and was a Department of State employee.

Furthermore, based on the termination-related email provided to me by KGS, it appears that information concerning the stated reasons for my termination originated from a CGI Federal supervisor. That supervisor had added information and/or entries to my employee record that were subsequently relied upon in connection with my termination.

Because the purported termination did not follow the required procedure, I reported for duty on the following Monday, November 17, 2025.

When I reported for duty, CGI Federal supervisors and management approached me, and I sought separation paperwork.

Accordingly, I request that EEOC investigate both November 14 and November 17 as relevant dates concerning the termination.

I further request that EEOC determine whether the November 14 communication was merely an attempted termination notice, whether the employment relationship remained active through November 17, and what date KGS internally recorded as my actual termination date.

The distinction is relevant to both the factual chronology and the applicable filing period.

## X. PRETEXT AND DISPARATE TREATMENT

The reasons eventually given for my termination included matters that I believe were inconsistent with my employment history and/or were cited only after the adverse actions had begun.

For example, my October 23 request that an unusual lunch directive be provided in writing was initially followed by withdrawal of that directive, but the request was later cited as a reason supporting termination.

Likewise, the September 9 tardiness write-up was my first disciplinary write-up despite my prior promotions and continued employment in positions requiring similar clock-in practices. It would appear that I was being held to a different standard than the other contractor employees concerning clock-ins and attendance, and I believe this was in an attempt to provide some legitimacy to their efforts to end my employment and avoid the appearance of sex-based discrimination in violation of Title VII; as well as an avoidance of dealing with other harassment issues.

I believe the timing, changing explanations, and reliance upon conduct that management had previously accepted or withdrawn are evidence that the stated reasons for termination were pretextual. These actions and scrutiny, among others, created a hostile work environment for me (the woman) while Mr. Wright enjoyed "business as usual" in his station.

I request that EEOC compare my disciplinary history, attendance records, lunch schedules, performance records, promotions, and treatment with the other federal contractors supporing passport opperations on site in our building.

## XI. DEPARTMENT OF STATE AND CGI FEDERAL INVOLVEMENT

Although KGS was my direct employer, I specifically request investigation of CGI Federal and the Department of State.

I am not asking EEOC to assume that DOS is automatically my employer merely because I worked at a federal facility.

Instead, I request an investigation into the actual working relationship and the degree of authority and control exercised by CGI Federal and Department of State personnel.

EEOC has recognized that a federal agency can, depending on the facts, be a joint employer of an individual supplied through a private contractor, and that the analysis turns on the actual degree of control over the individual's work rather than simply who issued the paycheck.

My circumstances warrant such an inquiry because:

- I performed my work at a Department of State facility;
- my work directly supported Department of State Passport Specialists;
- I supplied Department of State Passport Specialists with batches of applications from BSR, and met Carlton Wright through my working relationship and contact with him at this location,
- I regularly prepared IRLs for Department of State Passport Specialists, including Mr. Wright;
- Mr. Wright was a Department of State Passport Specialist working on the same floor;

- my supervisor communicated with Mr. Wright's supervisor concerning Mr. Wright's repeated visits to my workstation;
- my assignment existed within the CGI Federal/Department of State contract structure;
- KGS specifically told me that a "request to remove" me from the assignment had been made via email;
- KGS did not identify who made that request; and
- my termination followed that removal request almost immediately.

EEOC should therefore determine whether Department of State or CGI Federal personnel had authority to affect my assignment, removal, discipline, or continued access to the Charleston Passport Center.

If EEOC determines that DOS does not constitute my employer or joint employer for purposes of a particular statutory claim, I nevertheless request that EEOC preserve and investigate the underlying evidence concerning the role of DOS personnel and determine whether another legally cognizable theory applies.

## XII. SEX DISCRIMINATION AND RELATIONSHIP-BASED TREATMENT

I believe I was treated adversely because of my sex and because of the changes in my romantic relationship as well as the conflicts that arose with Mr. Wright.

The central issue is not simply that Mr. Wright and I dated. Rather, the relevant employment consequences began in close temporal proximity to the "breakup" and the discovery of his misrepresentation regarding his marital status—specifically, Mr. Wright's representation that he was divorced when he was not. This was followed by messages sent to Mr. Wright's wife, the resulting conflict, and the withdrawal of $10,000 from his account. The resulting dispute involving Mr. Wright and his wife subsequently became known and coincided closely with the adverse employment actions taken against me.

The sequence was:

- **Chronological Statement of Relevant Events**
  - **May 2024 — Employment Begins at Charleston Passport Center (CPC)**
    - **Event:** I began employment at the Charleston Passport Center (CPC) as a contractor in a Level II position.
    - **Persons involved:** Nicole Gray; KGS/CGI; CPC.
    - **Evidence/Documentation:** Employment records.
    - **Significance:** This establishes the beginning of my contractor employment relationship and provides the starting point for my employment history.
  - **September 2024 — Level III Promotion Opportunities**

- **Event:** I was offered two Level III promotion opportunities: Processing Level III and Customer Service Level III. My security clearance was also redone in connection with the position change.
- **Persons involved:** Nicole Gray; KGS/CGI.
- **Evidence/Documentation:** Promotion records; clearance documentation.
- **Significance:** These events demonstrate that I was viewed favorably, was advancing within my position, and was entrusted with increased responsibilities before the events giving rise to this complaint.

- **October 2024 — Romantic Relationship with Carlton Wright Begins**
  - **Event:** I began a romantic relationship with Carlton Wright while we were both working at CPC.
  - **Persons involved:** Nicole Gray; Carlton Wright.
  - **Evidence/Documentation:** Text messages; communications; personal records.
  - **Significance:** The relationship began after my employment had already been established and after I had received opportunities for advancement. This timing is relevant to the later allegations concerning the relationship and the employment consequences that followed.
- **November 2024 — Level III Customer Service Position**
  - **Event:** I began working in my Level III Customer Service position.
  - **Persons involved:** Nicole Gray; CPC.
  - **Evidence/Documentation:** Promotion documentation.
  - **Significance:** This further establishes my successful advancement and favorable employment history before the subsequent adverse employment actions.
- **January 2025 — Continued RTS Hallway Assignment**
  - **Event:** I remained assigned to RTS hallway cubicles despite having completed multiple customer service rotations. I understood this continued assignment to be related to my strong production and performance.
  - **Persons involved:** Nicole Gray; RTS management.
  - **Evidence/Documentation:** Rotation records; performance records.
  - **Significance:** This is relevant to establishing my favorable employment history and performance before the adverse actions that followed.
- **August 27, 2025 — Carlton Wright Represents That He Is Proceeding With Divorce**
  - **Event:** Carlton Wright sent me a text stating that his final divorce hearing was scheduled for September 3, 2025. He subsequently came to work wearing a bowtie and told me that he was going to his divorce hearing.
  - **Persons involved:** Nicole Gray; Carlton Wright.
  - **Evidence/Documentation:** Text messages; potential witnesses.

        - **Significance:** This communication is relevant to my contention that Carlton Wright misrepresented his marital status to me.
    - **August 28, 2025 — a "Break-up" Occurs**
        - **Event:** My romantic relationship with Carlton Wright changed in that he had "broken-up" with me but continued being romantic and sexual. He seemed distraught about his decision to break up and I was confused.
        - **Persons involved:** Nicole Gray; Carlton Wright.
        - **Evidence/Documentation:** Communications.
        - **Significance:** This marks the relationship-conflict timeline that preceded the subsequent employment-related events.
    - **September 9, 2025 — First-Ever Disciplinary Write-Up**
        - **Event:** I received my first-ever disciplinary write-up, which alleged that I had been tardy.
        - **Persons involved:** Nicole Gray; supervisors.
        - **Evidence/Documentation:** Disciplinary write-up; attendance records.
        - **Significance:** The timing and circumstances of this first disciplinary action may be relevant to issues of inconsistent discipline, pretext, and the subsequent escalation of adverse employment actions.
    - **September 10, 2025 — Disclosure of Nepotism and Hiring Concerns**
        - **Event:** I disclosed concerns regarding alleged nepotism and hiring irregularities at the Passport Center to my contractor.
        - **Persons involved:** Nicole Gray; KGS/contractor.
        - **Evidence/Documentation:** Disclosure email.
        - **Significance:** This disclosure was subsequently reviewed by the Department of State Office of Inspector General (DOS OIG) in connection with contractor whistleblower protections and is relevant to my allegations concerning retaliation.
    - **September 10, 2025 — Sylvia Wright Publicly Announces Campaign Launch**
        - **Event:** Sylvia Wright publicly announced on her campaign Facebook page that September 10, 2025, marked the official launch of her campaign for South Carolina Superintendent of Education.
        - **Persons involved:** Sylvia Wright.
        - **Evidence/Documentation:** Sylvia Wright campaign Facebook post/announcement; screenshot or archived copy.
        - **Significance:** This establishes that Sylvia Wright was publicly active in her campaign for South Carolina Superintendent of Education as of September 10, 2025. The date is relevant to the chronology of subsequent events and communications involving Sylvia Wright, Carlton Wright, and my employment.
    - **September 29, 2025 — Removal from RTS Hallway Assignment**

- **Event:** I was removed from my RTS hallway cubicle assignment and moved to CSOP. This was not, to my knowledge, a normal customer-service rotation, and only I and one other employee were moved in this manner.
- **Persons involved:** Nicole Gray; supervisors.
- **Evidence/Documentation:** Assignment records.
- **Significance:** This may constitute an adverse employment action. Its timing, shortly after my September 10 disclosure and approximately one month after the end of my relationship with Carlton Wright, is relevant to issues of causation and pretext.

- **October 2025 — Continued Romantic Involvement and Misrepresentation by Carlton Wright that he is divorced**
  - **Event:** Following the breakup, Carlton Wright continued sporadic romantic and sexual involvement with me while maintaining the that he was divorced.
  - **Persons involved:** Nicole Gray; Carlton Wright.
  - **Evidence/Documentation:** Text messages; communications.
  - **Significance:** These circumstances are relevant to the alleged deception concerning Carlton Wright's marital status and the personal conflict that subsequently developed.

- **October 14, 2025 — Verification of Carlton Wright's Divorce Status**
  - **Event:** I contacted the Berkeley County court and verified that there was no divorce record for Carlton Wright. I subsequently confronted him via text message regarding whether he was actually divorced. He accuses me of "harassment" and "stalking" for checking if he was actually divorced, although our romantic and sexual relationship had continued.
  - **Persons involved:** Nicole Gray; Carlton Wright.
  - **Evidence/Documentation:** Court records; text messages.
- **October 21, 2025 — Discovery of Sylvia Wright's Campaign Video**
  - **Event:** I located a campaign video involving Sylvia Wright in which she referred to herself as a present tense wife; or "Air Force wife." Based on this information, I concluded that Carlton Wright remained married.
  - **Persons involved:** Nicole Gray; Sylvia Wright.
  - **Evidence/Documentation:** Campaign video/social-media post.
  - **Significance:** The video provided additional information confirming my suspicion that Carlton Wright had misrepresented his marital status and lied about being divorced.
- **October 21, 2025 — Confrontation with Carlton Wright**

- **Event:** I sent Carlton Wright a screenshot of Sylvia Wright's campaign video and informed him that I knew he had lied to me about being divorced.
- **Persons involved:** Nicole Gray; Carlton Wright.
- **Evidence/Documentation:** Text message.
- **Significance:** This communication documents the escalation of the personal conflict immediately before my subsequent communications with Sylvia Wright and the later employment-related events.

- **October 21, 2025 — Communication With Sylvia Wright**
  - **Event:** I emailed Sylvia Wright and informed her that Carlton Wright had represented himself to me as divorced. I also provided information concerning alleged marital indiscretions. Carlton Wright was copied on the email.
  - **Persons involved:** Nicole Gray; Sylvia Wright; Carlton Wright.
  - **Evidence/Documentation:** Email.
  - **Significance:** This communication is potentially significant because it occurred shortly before the subsequent employment-related actions and may help establish the chronology and circumstances surrounding those actions.
- **October 23, 2025 — Lunch Schedule Directive**
  - **Event:** I was directed to change my lunch schedule. I requested that the directive be provided to me in writing, after which the directive was withdrawn.
  - **Persons involved:** Nicole Gray; supervisors.
  - **Evidence/Documentation:** Emails; messages.

- **October 26, 2025 — Reported $10,000 Account Withdrawal**
  - **Event:** Carlton Wright reported that $10,000 had been taken from his account and later stated that Sylvia Wright was responsible, by directing thier adult daughter to withdrawl and give Sylvia the funds, which occured after receiving my October 21 email.
  - **Persons involved:** Nicole Gray; Carlton Wright; Sylvia Wright.
  - **Evidence/Documentation:** Text messages; potential financial records.
- **November 10, 2025 — Continued Communication With Sylvia Wright**
  - **Event:** I contacted Sylvia Wright and informed her that Carlton Wright continued to engage in romantic behavior and that I did not want to be involved in a "love triangle."
  - **Persons involved:** Nicole Gray; Sylvia Wright.
  - **Evidence/Documentation:** Messages.

- **Significance:** This demonstrates that the personal conflict remained ongoing shortly before the employment actions that followed.

- **November 14, 2025 — 7:58 PM — Notice of Request for Removal From Assignment**
  - **Event:** KGS informed me by email that there had been a request to remove me from the assignment. The email did not identify the individual who had made the request.
  - **Persons involved:** Nicole Gray; KGS; CGI; potentially Department of State personnel.
  - **Evidence/Documentation:** KGS email dated November 14, 2025, at 7:58 PM.
  - **Significance:** This is potentially **critical causation evidence** because it raises the question of who initiated or influenced the request for my removal from the assignment and whether CGI Federal personnel were involved in or influenced the employment decision.
- **November 14, 2025 — Purported Termination of Employment**
  - **Event:** KGS sent me an email purporting to terminate my employment.
  - **Persons involved:** Nicole Gray; KGS; CGI.
  - **Evidence/Documentation:** Termination email; termination records.
  - **Significance:** This constitutes the central adverse employment action at issue in my complaint. I contend that the termination did not comply with applicable procedures and requirements and that information provided by CGI Federal personnel may have been relied upon in making or supporting the termination decision.
- **Late 2025 — Termination From KGS Employment**
  - **Event:** My employment with KGS at CPC was terminated.
  - **Persons involved:** Nicole Gray; KGS; CGI.
  - **Evidence/Documentation:** Termination records; termination communications.
  - **Significance:** This represents the principal adverse employment action underlying my complaint.
- **December 15, 2025 — OSC Preliminary Determination**
  - **Event:** The U.S. Office of Special Counsel (OSC) issued a preliminary determination concerning my complaint.
  - **Persons involved:** OSC.
  - **Evidence/Documentation:** OSC letter.
  - **Significance:** The determination addressed jurisdictional issues and did not constitute a determination on the merits of the underlying allegations.
- **December 18, 2025 — Response to OSC**

- **Event:** I responded to OSC with additional evidence concerning applicant status, hiring concerns, retaliation, and whistleblower issues.
- **Persons involved:** Nicole Gray; OSC.
- **Evidence/Documentation:** OSC submission.
- **Significance:** This expanded the evidentiary record concerning the issues raised in my complaint.

- **December 29, 2025 — OSC Closes Complaint**
  - **Event:** OSC closed my complaint after determining that my contractor status placed the claims presented outside its jurisdiction.
  - **Persons involved:** OSC.
  - **Evidence/Documentation:** Final OSC letter.
  - **Significance:** The closure was based on jurisdiction and did **not constitute a determination that my termination or the underlying conduct was lawful.**
- **January 2026 — Contractor Whistleblower Complaint Filed With DOS OIG**
  - **Event:** I filed a contractor whistleblower complaint with the Department of State Office of Inspector General under 41 U.S.C. § 4712.
  - **Persons involved:** Nicole Gray; DOS OIG.
  - **Evidence/Documentation:** OIG complaint.
  - **Significance:** This established a separate whistleblower-review process concerning my disclosure and alleged retaliation.
- **May 13, 2026 — DOS OIG Closes Complaint**
  - **Event:** DOS OIG closed my complaint after determining that the September 10 disclosure was insufficiently specific to qualify as a protected disclosure.
  - **Persons involved:** DOS OIG.
  - **Evidence/Documentation:** OIG determination.
  - **Significance:** This determination addressed the sufficiency of the September 10 disclosure for purposes of the whistleblower claim. It did not resolve the separate issues concerning the personal relationship, alleged interference with my employment, or the circumstances surrounding my termination.
- **July 9, 2026 — Federal Contract Employment Offer Rescinded**
  - **Event:** A federal contract employment offer in the immigration field was rescinded following my background check. I was informed that the reason for the rescission related specifically to my termination at the Charleston Passport Center.
  - **Persons involved:** Nicole Gray; prospective federal contractor employer.
  - **Evidence/Documentation:** Offer-rescission notice; background-check documentation; communications with prospective employer.

- **Significance:** This is evidence of potential **continuing damages** resulting from my termination. It indicates that information concerning my CPC termination may continue to affect my ability to obtain federal-contract employment and earning opportunities. It may therefore be relevant to damages, reputational harm, and future employment consequences.

The timing and sequence warrant investigation into whether my sex, my relationship with Mr. Wright, the end of that relationship, or opposition to treatment arising from that relationship was a motivating factor in the adverse employment actions.

**XIII. RETALIATION**

I also allege retaliation for opposing and/or reporting conduct that I reasonably believed was discriminatory or otherwise improper.

In particular, I objected to employment treatment that I believed was being imposed because of circumstances surrounding Mr. Wright and his conduct toward me.

I communicated via email with management regarding the unusual reassignment and specifically questioned whether it was related to my breakup with Mr. Wright.

I also objected to the unusual lunch-schedule directive, stated to my colleagues and friends that I believed it was related to the events with Carlton and his wife, and requested that the directive be documented in writing.

I believe the subsequent use of my request for written confirmation, as well as my diclosure to my colleagues and friends that it was related to Carlton and I was displeased with the request, as a purported basis for termination supports an inference of retaliation and pretext. The contractor listed this as one of the reasons for termination in an email sent to me in November of 2025.

To the extent the investigation establishes that I opposed conduct covered by Title VII or complained of sex-based treatment, I request that EEOC treat those communications as protected opposition and investigate whether the subsequent discipline, assignment removal, and termination were retaliatory.

I further request that EEOC identify the dates and contents of all communications made by me to management concerning sex-based treatment, harassment, my relationship with Mr. Wright, or treatment I believed was connected to my status as a woman involved in that relationship.

## XIV. SEPTEMBER 10, 2025 WHISTLEBLOWER DISCLOSURE

Separately, on September 10, 2025, I made a written disclosure concerning suspected nepotism and irregular hiring practices involving Department of State and CGI Federal personnel at the Passport Center.

I subsequently pursued a whistleblower complaint under 41 U.S.C. § 4712 with the Department of State Office of Inspector General.

The OIG ultimately closed the complaint on May 13, 2026 after determining that my September 10 disclosure was not sufficiently specific to constitute a protected disclosure under § 4712.

I do not ask EEOC to overturn that determination as they have provided another alternative with the option to file a de novo lawsuit in federal courts.

I include the disclosure because it is part of the chronological record and because EEOC should determine whether any employment action was motivated by that disclosure or by other protected activity.

If EEOC determines that the September 10 disclosure is not protected under Title VII, I understand that it may constitute a separate statutory issue outside EEOC's jurisdiction.

## XV. ONGOING HARM TO MY CAREER

The consequences of the November 2025 termination have continued beyond the termination itself.

On July 9, 2026, I received an offer for a federal contract position involving immigration-related work.

The offer was rescinded following the background-check process specifically because of my termination from the Charleston Passport Center.

I received a vidoe interview request for yet another federal contracting position, and a subsequent phone interview. However, after I informed the interview of the termination at the passport center it was determined they could no longer move forward with my application.

Thus, the consequences of the termination are not merely historical.

The termination has been placed into my employment/background record and has directly interfered with subsequent federal-contract employment opportunities.

I believe this demonstrates continuing economic and professional harm flowing from the November 2025 termination.

I request that EEOC consider these events as evidence of continuing economic and professional consequences and damages resulting from the alleged discriminatory and retaliatory termination, while recognizing that the rescission itself occurred on July 9, 2026 and is a separate and later event.

I further request that EEOC investigate whether any Respondent communicated information about my termination to subsequent prospective employers and, if so, what information was communicated and by whom.

## XVI. REQUEST FOR INVESTIGATION AND RECORDS

I respectfully request that EEOC investigate the complete sequence of events and obtain relevant records from KGS, CGI Federal, and the Department of State.

In particular, I request investigation and preservation of:

- all communications concerning my employment;
- all communications concerning my reassignment from RTS to CSOP;
- all communications concerning Carlton Wright and me;
- communications between Mr. Wright and KGS, CGI Federal, or Department of State management concerning me;
- communications between Sylvia Wright and any person involved in my employment;
- the identity of the person who made the November 14 "request to remove";
- the actual removal request;
- the contractual provisions governing removal of contractor personnel from the assignment;
- communications concerning my removal from the assignment;
- my attendance records;
- my disciplinary records;
- the September 9 write-up;
- the October 23 lunch-schedule directive;
- communications concerning my request that the directive be provided in writing;
- documents later relying upon that request as a basis for discipline or termination;
- my performance records;
- records concerning my promotions;
- records concerning similarly situated employees;
- records concerning the November 14 termination;
- KGS policies and handbook provisions governing termination;
- records showing the effective date of my termination;

- communications between KGS and CGI Federal concerning my termination;
- communications between CGI Federal and Department of State personnel concerning my termination;
- records identifying the authority responsible for contractor removals at the Charleston Passport Center; and
- any investigation, complaint, or report concerning me that was relied upon in making employment decisions.

## XVII. RELIEF REQUESTED

I respectfully request that EEOC investigate these allegations and determine whether KGS, CGI Federal, the Department of State, or their respective employees or agents violated federal equal-employment laws.

I request all relief available under applicable law, including, as appropriate:

- reinstatement or comparable employment relief;
- front pay and/or back pay;
- compensation for lost wages and employment opportunities;
- compensation for emotional distress and other compensatory damages to the extent available;
- correction or removal of discriminatory or retaliatory employment records;
- correction of records concerning the reason for my termination;
- relief necessary to mitigate the continuing professional consequences of the termination;
- reasonable attorney's fees and costs where available; and
- any other equitable or monetary relief authorized by law.

I also request that EEOC investigate the involvement of CGI Federal and Department of State personnel rather than limiting the investigation to the identity of my direct payroll employer as that contractor was supplying staff for CGI federal but did not have any employees in a supervisory capacity on the site or within the chain of comand at the Charleston Passport Center. And, in contrast, both CGI Federal and DOS did have supervisory employees involved in my chain of command.

## XVIII. TIMELINESS

I am filing this charge before the expiration of the applicable 300-day period.

The principal termination-related events occurred on November 14, 2025 and, because I reported for duty after the purported termination notice, November 17, 2025.

Three hundred days from November 14, 2025 is September 10, 2026.

Three hundred days from November 14, 2025 is September 10, 2026.

Three hundred days from November 17, 2025 is September 13, 2026.

Other relevant events also fall within the 300-day period, including the September 9, 2025 disciplinary write-up, the September 29, 2025 reassignment, and the October 23, 2025 lunch-schedule incident.

I am therefore submitting this charge before the September 10, 2026 deadline applicable to the November 14 termination notice.

To the extent EEOC determines that another date constitutes the operative termination date, or that any individual event is subject to a different limitations analysis, I respectfully request that the charge be deemed timely as to all independently actionable events occurring within the applicable limitations period.

I further request that EEOC consider earlier events as background and evidence of motive, knowledge, causation, and pretext to the extent permitted by law.

**XIX. CONCLUSION**

I am requesting an investigation because the evidence presents an unusual and closely timed sequence involving a romantic relationship with a Department of State employee, the termination of that relationship, unusual workplace changes, disciplinary actions, a disputed lunch directive, a subsequent unexplained "request to remove" me from my federal contract assignment, and my termination shortly thereafter.

At this time, I do not ask EEOC to assume that any particular individual caused my termination.

Instead, I ask EEOC to determine who requested my removal, who communicated with KGS and CGI Federal concerning me, whether Department of State personnel participated in or influenced the employment decisions, and whether the stated reasons for my termination were legitimate or pretextual.

I believe the evidence I am providing indicates and further evidence will continue to show that my employment was adversely affected in part because of my sex, my romantic relationship with Mr. Wright, circumstances arising from the conflict of that relationship, and/or my opposition to discriminatory treatment, and that KGS, CGI Federal, and/or Department of State personnel may have participated in or facilitated those actions.

I declare that the foregoing is true and accurate to the best of my knowledge and belief.

Signature: [signature] Date: ~~September 7, 2026~~ September 3, 2026
Nicole Anastasia Gray

- **Exhibit 1:** KGS employment records showing your employment and position.
- **Exhibit 2:** Evidence of your promotions and performance.
- **Exhibit 3:** Evidence establishing your duties supporting DOS Passport Specialists.
- **Exhibit 4:** Evidence establishing Carlton Wright's DOS position. (LOR email)
- **Exhibit 5:** August 27 divorce-hearing approaching on September 3 text, subsequent August 29 "break up" text
- **Exhibit 6:** September 9 write-up.
- **Exhibit 7:** September 29 I am moved from RTS → CSOP reassignment documentation email. I replied via email asking whether the reassignment was related to the breakup with Carlton Wright via a reply all to supervisors/managment and the other employee I was swapped with
- **Exhibit 9:** October 14 text exchange with Carlton questioning if he is in fact divorced.
- **Exhibit 10:** October 21 text and email to Sylvia Wright.
- **Exhibit 11:** October 23 lunch schedule change directive and request for written confirmation of such, later cited as grounds/reasons for termination.
- **Exhibit 12:** October 26 text exchange where Carlton Wright indicates $10,000 was removed from Carltons account by a party he knows.
- **Exhibit 13:** November 10 communication with Sylvia indicating I know about the $10,000 taken from Carltons account and his continued advances
- **Exhibit 14: November 14, 2025 7:58 p.m. KGS "request to remove" email.**
- **Exhibit 15:** November 14 termination email.
- **Exhibit 16:** November 17 events/separation documentation emails to supervisors HR
- **Exhibit 17:** Email including the contractor's later termination explanations including lunch schedule directive and request for it in writing as a cause for termination
- **Exhibit 18:** November 2025 text messages showing **supervisors and management were aware of the romantic relationship,** actions taken by them
- **Exhibit 19:** Evidence **Carlton had reconciled with his wife,** vacated his apartment, and moved back into the marital residence while **concealing this** from me and **continuing a romantic and sexual relationship with me; and proximity to my (the woman's) termination.** Text messages, emails, and "Complaint" filed by Syliva Wright indicating he had moved back in; and then left the marital home again on 3/6/2026
- **Exhibit 20:** May 13, 2026 OIG determination.
- **Exhibit 21:** July 9, 2026 rescinded immigration-related federal contract offer and documentation stating that the rescission resulted from your Passport Center termination.